UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ERIC JOHN NEES,

Petitioner,

v.

NEVADA ATTORNEY GENERAL, *et al.*,

Respondents.

Case No. 3:10-cv-00092-MMD-CBC

ORDER

**I.   SUMMARY**

This *pro se* habeas matter comes before the Court for consideration of the merits of the petition (ECF No. 45).[1] For the reasons explained below, the Court will deny the petition.

**II.   BACKGROUND**

Petitioner Eric Nees challenges his 2006 state court conviction, pursuant to a jury trial, of aiding and abetting the commission of robbery with the use of a deadly weapon, in connection with the robbery of Herman Buehler on April 20, 2006. (ECF No. 45 at 1 (Exhibit "Exh." 43.)[2]

Six weeks prior to the date in question, Buehler met Petitioner and began to occasionally purchase methamphetamine from him. (Exh. 33A (Tr. 27, 29).) Petitioner would come to Buehler's house for the transactions, often with someone else, but the other person always stayed in the car, which was typical of Buehler's experience with drug transactions. (*Id.* at 30, 35-36.) About a week before the incident, Petitioner asked

---

[1]Respondents have answered (ECF No. 82), and Petitioner has replied (ECF Nos. 85, 91).

[2]The exhibits cited in this order, which comprise the state court record in this case, are located at ECF Nos. 13-19, 68.

Buehler for an eighth of an ounce from the drugs he had just sold Buehler, promising to return immediately with the money to pay him back. (*Id.* at 37.) Buehler gave Petitioner the eighth, but Petitioner never returned. (*Id.* at 37-38.)

On April 20, 2006, Buehler was outside waxing his car when Petitioner walked up and apologized. (*Id.* at 36.) Petitioner said he would give Buehler an extra eighth if Buehler would buy more methamphetamine; he did not offer to pay Buehler back. (*Id.* at 38-39.) Buehler did not really want to make another purchase but agreed to do so to get his money back. (*Id.* at 39.) Petitioner asked Buehler how much money he had, and Buehler, who "felt something was up," said he did not have much because he had just made a purchase. (*Id.* at 39-40.) After they went into the house, Petitioner said he was going to get his partner from the car while Buehler got his scale. (*Id.* at 40-41.) Buehler said he didn't like Petitioner bringing people along but to go ahead. (*Id.* at 41.)

Buehler set up his scale and waited, and two to three minutes later Petitioner returned with two men Buehler had never seen before. (*Id.* at 42-44.) One of the men walked toward the back of the house; Buehler asked everyone to stay in the kitchen, but the men ignored him. (Exh. 33B (Tr. 45).) As the man who'd gone to the back finished looking around, the other man pulled out a gun and told Buehler to lay on the floor. (*Id.* at 46.) The gunman spoke angrily and appeared high or crazy. (Exh. 33C (Tr. 95).) Buehler did as directed. (Exh. 33B (Tr. 47).) Buehler looked at Petitioner and Petitioner's face was "like business, normal." (*Id.*) The gunman stepped over Buehler to rifle through Buehler's things. (*Id.* at 48-49.) He then told Petitioner to get Buehler's wallet. (*Id.* at 49.) As Petitioner bent down to get Buehler's wallet, Buehler looked at Petitioner with a look of disgust, but there was no particular expression on Petitioner's face, "just business." (*Id.* at 49-50.) The gunman asked Buehler if there were any more money or drugs, then said, "let's go," and the three men left. (*Id.* at 50.)

After the men left, Buehler called his neighbor Faith Martin. (*Id.* at 131-33; Exh. 33B (Tr. 58).) Seconds before Buehler called, Faith had seen a silver car speeding down the alley with a man's legs and feet hanging out the driver's side door, the door open.

(Exh. 33C (Tr. 127-30).) At Faith's urging, Buehler called the police (Exh. 33C (Tr. 134); Exh. 33B (Tr. 62).)

Petitioner was arrested and charged with conspiracy to commit armed robbery and aiding and abetting the commission of an armed robbery. (Exh. 4.) At Petitioner's trial, defense counsel argued that there was no evidence that Petitioner participated in the robbery, that Petitioner was just as surprised as Buehler was when the gunman pulled out the gun, and that it was the gunman giving orders. (Exh. 33A (Tr. 17-20).) Counsel argued that Petitioner was acting under duress of the crazy, angry, meth-addled gunman. (Exh. 34 (Tr. 52-54).) She asserted that although Buehler had portrayed Petitioner as unfazed by the gun and direction to rob Buehler, Buehler's assessment of Petitioner's demeanor was not credible and could not be believed. (*Id.* at 43-46.)

The jury ultimately found Petitioner guilty of aiding and abetting robbery with use of a deadly weapon but not guilty of conspiracy to commit armed robbery. (Exh. 37.) Petitioner was sentenced, judgment of conviction entered, and an appeal filed. (Exhs. 42-44.) The Nevada Supreme Court affirmed Petitioner's judgment and sentence. (Exh. 59.)

Petitioner thereafter pursued two postconviction petitions for habeas relief in state court. (Exhs. 65, 92, 96, 100, 116.) His amended federal habeas petition now comes before the Court for consideration on the merits.

### III. LEGAL STANDARD

28 U.S.C. § 2254(d) provides the legal standards for this Court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

4

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *See Cullen*, 563 U.S. at 181. The state courts' decisions on the merits are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, -- U.S. --, 135 S. Ct. 2187, 2208 (2015).

**IV.  DISCUSSION**

In the amended petition, which is the operative petition in this case, Petitioner asserts three grounds for relief: (1) trial counsel was ineffective for advising him not to testify; (2) trial counsel did not confer with Petitioner about his theory of defense, file pretrial motions on his behalf, or advise the trial court that a conflict existed and Petitioner wanted new counsel; and (3) insufficient evidence supported his conviction for aiding and abetting armed robbery with use of a deadly weapon. (ECF No. 45.) Several portions of Petitioner's claims have been abandoned by Petitioner after they were deemed unexhausted, so this order addresses only the surviving claims.

///

**A. Ground 1**

In Ground 1, Petitioner asserts that trial counsel was ineffective for advising him against, and barring him from, testifying. (ECF No. 45 at 3.) Petitioner asserts that testimony as to his state of mind was necessary to support his claim of duress and that without his testimony, the defense was an "empty shell." (*Id.* at 4; ECF No. 91 at 7.) The trial court rejected Petitioner's claim as follows:

> The defense strategy of trying to keep out criminal history was reasonable in light of the fact that Nees had a total of 22 convictions between the years 1990-2005, seven of which were felonies. Of these convictions, one was a felony conviction for Burglary, one was a gross misdemeanor conviction for Conspiracy to Commit Grand Larceny and Nees had three misdemeanor convictions for Petit Larceny/Theft. The other convictions involved drugs, child abuse, Contempt and Conspiracy to Commit the Crime of Cheating at Gambling.
>
> The record also indicates that trial counsel sufficiently advised Nee[s] of his options. In a letter dated September 5, 2006, trial counsel wrote, "In deciding whether or not to testify, you will need to weigh the pros and cons. By testifying, you ensure the jury will hear your side of the story. . . But once you take the stand, the jury will hear of your record."

(Exh. 75 at 3-4.) The Nevada Supreme Court affirmed, holding:

> Nee contends that trial counsel was ineffective for advising him not to testify when he had an affirmative defense of duress and that the district court abused its discretion by denying this ineffective assistance of counsel claim without the benefit of an evidentiary hearing. . . . Here, the district court found that the record indicated that trial counsel sufficiently advised Nees of the pros and cons of testifying. The district court's finding is supported by substantial evidence and is not clearly wrong, and Nees has not demonstrated that the district court erred as a matter of law. Further, we conclude Nees was not entitled to an evidentiary hearing because his claim was contradicted by the record that existed when he made his claim. . . .

(Exh. 92 at 1-2.) The state courts' resolution of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and was not an unreasonable determination of the facts.

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating

that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the Court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* at 696.

Petitioner asserts that counsel did not adequately explain to him the pros and cons of testifying. This claim, however, is clearly belied by the record. Counsel's communications with Petitioner in the six months leading up to his trial, submitted by Petitioner as Exhibit D to his state postconviction habeas petition, show a continuing dialogue with Petitioner about the decision to testify, including the potential that Petitioner's substantial criminal history would be revealed to the jury if he testified and the difficulty of introducing evidence to support the claim of duress if he did not testify. (Exh. 66B.) Two weeks before trial, counsel asked Petitioner to review his prior testimony for inconsistencies, errors, or misconceptions so they could be prepared in case he decided to testify. (*Id.* at 39.) In that same letter, counsel discussed potential ways of downplaying Petitioner's criminal history were he to testify. (*Id.* at 39-40.) Petitioner's assertion that counsel did not clearly explain the pros and cons of testifying is thus plainly without merit.

Petitioner asserts counsel unreasonably advised him not to testify. Without his testimony, there was nothing to support his defense, he asserts, and his criminal history came in anyway by way of the State's motion to admit prior bad acts. While it is true that the jury learned some of Petitioner's criminal history—specifically that Petitioner had conducted illegal drug transactions with Buehler in the weeks leading up to the incident—Petitioner's criminal history was far more extensive than that limited information. Petitioner had several prior convictions that would have been admissible pursuant to Nevada Revised Statutes § 50.095, including felony convictions for burglary, possession of a stolen motor vehicle, and manufacturing a controlled substance. (ECF No 17-12 at

7

19-21.) In light of this criminal history, it was not objectively unreasonable for counsel to advise Petitioner not to testify.

Petitioner asserts that counsel badgered him into giving up his right to testify, having already decided he would not do so. Nothing in the record supports this contention. Counsel's letters reveal that counsel was actively preparing for Petitioner's testimony, even as she advised him against it. Petitioner asserts that counsel's heavy hand is evident in the fact that the court's proposed instruction regarding a defendant's failure to testify before Petitioner had made his decision. During trial, the court canvassed Petitioner about his right to testify as follows:

| | |
|---|---|
| The Court: | Under the Constitution of both the United States and the State of Nevada, you cannot be compelled to testify in this case. Do you understand that? |
| The Defendant: | Yes, ma'am. |
| The Court: | You may at your own request give up this right and take the witness stand and testify. If you do, you will be subject to cross-examination by the District Attorney and anything you say, be it on direct or cross-examination, will be the subject of fair comment under the – when the District Attorney speaks to the jury at the end of the case. Do you understand that? |
| The Defendant: | Yes, ma'am. |
| The Court: | If you choose not to testify, the court will not permit the District Attorney to make any comments to the jury because you have remained silent. Do you understand that? |
| The Defendant: | Yes, ma'am. |
| The Court: | Okay, if you elect not to testify, the court will instruct the jury, but only if your attorney specifically requests as follows: The law does not compel a defendant in a criminal case to take the stand and testify. And no presumption may be made and no inference of any kind may be drawn from the failure of a defendant to testify. Do you understand that? |
| Ms. Nielson: | That's the instruction. |
| The Court: | That would be an instruction that we would use. |
| The Defendant: | Could you repeat that, please? I'm sorry. |

| | | |
|---|---|---|
| 1 | The Court: | I'll read it again for you. And I'm reading it directly so that we can make sure that this is exactly what we would say to the jury. Okay? The law does not compel a defendant in a criminal case to take the stand and testify. And no presumption may be made and no inference of any kind may be drawn from the failure of a defendant to testify. If you don't testify, your counsel can ask for that instruction, and the Court will give that instruction to the jury. Do you understand that? |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | The Defendant: | A little. Not fully. |
| 7 | The Court: | If you want to take a minute and talk to your counsel about that, please do. |
| 8 | (Whispered conference between attorney and client.) | |
| 9 | Ms. Nielson: | Yes, Your Honor. We've had an extensive conversation. This is an issue that came up before, and I haven't really had a chance to talk to my client about the pros and cons of that particular instruction, and that's what caused the confusion. So before we settle the jury instructions, if you would give me some time so I can talk to him about that. |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | The Court: | Of course. |
| 14 | Ms. Nielson: | Thank you. |
| 15 | The Court: | Sir, one other thing I need to tell you is if you choose to take the stand, at that point the . . . District Attorney can, in the presence of the jury, ask you about if you've been convicted of a felony within the last ten years, what the felony was, when it happened, and it can't ask you for details, but it can ask you those specific questions about prior felonies as well. So if you choose to take the stand, that information will come before the jury as well. |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | The Defendant: | I understand. |
| 21 | The Court: | Okay, at this point sir, I need to, ask are you going to be waiving the right to testify, or are you going to be standing silent? |
| 22 | | |
| 23 | The Defendant: | I will not be taking the stand. |

(Exh. 33C (Tr. 144-48).)

The canvass shows that Petitioner was thoroughly advised of his right to testify, and the potential consequences of doing so, and that he knowingly elected not to testify. While Petitioner's confusion may have been fueled by a belief that counsel had already made the decision that he would not testify, this was certainly not a reasonable conclusion

9

for Petitioner to reach. The court repeatedly stated that it would give the instruction *if* he didn't testify and *if* counsel requested the instruction. In the canvass Petitioner acknowledged that the decision to testify was his alone to make. Petitioner has not otherwise established that counsel made that decision for him, and all the available evidence points to the contrary.

Petitioner has not established ineffective assistance of counsel with respect to his failure to testify. Thus, the state courts' finding that counsel did not perform deficiently was not objectively unreasonable and is amply supported by the record.

Petitioner is not entitled to relief on Ground 1 of the petition.

## B. Ground 2

In Ground 2, Petitioner asserts that trial counsel failed to adequately communicate regarding Petitioner's theory of defense and failed to file pretrial motions on his behalf. (ECF No. 45 at 6, 15.)[3] Petitioner asserts that there was a breakdown in his relationship with counsel, evidenced by counsel's statement that Petitioner should not "nitpick" the case. (*Id.* at 6.) He also asserts that the court failed to consider his requests for new counsel and that counsel should have alerted the court to Petitioner's request for new counsel. (*Id.*)

The trial court rejected the claim that counsel failed to communicate as follows:

> [T]he record belies the assertion that trial counsel failed to communicate with Nees. She wrote detailed letters to Nees regarding discovery issues and the status of his case. According to Exhibit "D" of Nees' Memorandum of Points and Authorities In Support of Petition for Writ of Habeas Corpus, trial counsel wrote seven letters to Nees between June 6, 2006 and September 5, 2006.

(Exh. 75 at 3.) The Nevada Supreme Court affirmed without discussion. (Exh. 92 at 2 n.1.) The state courts' ruling was neither contrary to, nor an unreasonable application of, clearly established federal law, and was not an unreasonable determination of the facts.

---

[3]The Court notes that the first page of Ground 2 is actually located at page fifteen of the petition and the second page is located at page six.

The correspondence between counsel and Petitioner show that counsel was fully aware of Petitioner's theory of defense and was actively brainstorming ideas to downplay his criminal history if he elected to testify. Counsel in fact relied on Petitioner's theory at trial, arguing that he acted in duress and that all available facts supported this theory. Petitioner does not identify in his petition what motions counsel should have filed. The record suggests Petitioner may have wanted counsel to file a motion pursuant to Nev. Rev. Stat. § 171.196(2). (Exh. 66B (Exh. D-2).) But counsel explained why such a motion would have lacked merit (*id.*), and Petitioner has not shown that this strategic decision fell outside the wide range of reasonable representation. And the record reflects that counsel filed the motion she believed appropriate, a petition for pretrial writ of habeas corpus arguing that there was insufficient evidence to hold Petitioner to answer for the crimes charged. (*Id.*; Exh. 14.) Petitioner has not shown that other motions were necessary or appropriate in the context of his case such that counsel might have been deficient in failing to file them.

As to Petitioner's assertion that the court failed to inquire into Petitioner's requests for new counsel, Petitioner has not established that he advised the court he was dissatisfied with counsel's performance or that he had a conflict with counsel. Petitioner asserts that he tried to raise his concerns with the court at a hearing on July 13, 2006, when he asked to say something but was told to speak through counsel. That Petitioner may have attempted to raise the issue does not demonstrate that he in fact raised the issue. Petitioner has not established that he could not have filed a written motion with the court raising his concerns. The court did not err in failing to consider a request it did not know Petitioner had.

Petitioner asserts that counsel should have told the court of Petitioner's concerns. The record reflects that Petitioner asked counsel for a new attorney once. Following counsel's response to Petitioner that he could not have another attorney from the defender's office, there is nothing to suggest that Petitioner renewed his request. Even assuming counsel should have advised the court of Petitioner's single request, Petitioner

11

has not shown such a conflict existed that his request for new counsel would have been granted. A defendant is entitled to conflict-free counsel, meaning counsel who is not actively representing conflicting interests. The Ninth Circuit has held that there is no clearly established federal law that the Sixth Amendment is violated "when the defendant is represented by a lawyer free of conflicts of interest but with whom defendant refused to cooperate because of dislike or distrust." *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc). Petitioner asserts a breakdown in the attorney-client relationship by pointing to the fact that counsel urged Petitioner many times to accept a plea deal and told Petitioner not to "nitpick" the victim's testimony. This does not demonstrate any actual conflict of interest between Petitioner and his counsel.

The state courts were not objectively unreasonable in rejecting this claim. Petitioner is not entitled to relief on Ground 2 of the petition.

**C. Ground 3**

Ground 3 comprises two claims: (1) Ground 3(a), which asserts that the evidence was insufficient to convict Petitioner of aiding and abetting robbery; and (2) Ground 3(b), which asserts that application of the deadly weapon enhancement was improper. Both allege that Petitioner's Fifth and Fourteenth Amendment rights were violated. (ECF No. 45 at 8-11.)

A federal court collaterally reviewing a state court conviction for sufficiency of the evidence does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard "looks to whether there is sufficient evidence which, if credited, could support the conviction." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). That is, "faced with a record of historical facts that supports conflicting inferences" the court "must presume—even if it does not affirmatively appear in the

record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010).

Petitioner argues there was insufficient evidence that he aided and abetted the robbery because the evidence showed he did not commit the robbery, the robbery was not planned, and the robber was in control, telling everyone in the room what to do. (ECF No. 45 at 8.) He argues that because the jury acquitted him of conspiracy, it could not have also concluded that he was a participant in the robbery. (*Id.* at 9.) Petitioner argues that evidence shows only that he took the wallet at the order of the gunman. (*Id.* at 9.)

The Nevada Supreme Court addressed the sufficiency of the evidence claim as follows:

> Nees contends that the evidence presented at trial was insufficient to support his conviction for aiding and abetting in the commission of a robbery with the use of a deadly weapon. In particular, he claims that the record does not support findings that he promoted, encouraged, or instigated the commission of the robbery; had knowledge that the robber was armed; and was able to exercise control over the firearm. Our review of the record on appeal, however, reveals sufficient evidence to establish Nees' guilt beyond a reasonable doubt as determined by a rational trier of fact. [FN 1: See McNair v. State, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
>
> We note that the jury heard evidence that Nees approached the victim outside of his residence and offered to sell him methamphetamine. When the victim accepted the offer, Nees asked him if he had any money and the victim responded that he had recently purchased methamphetamine and did not have much money. After entering the victim's house, Nees told the victim to set up his scale while he went to get his partner. Thereafter, Nees brought two men into the victim's house. One walked to the back of the house and into the bedroom "to see if it was clear," and the other pulled out a gun and ordered the victim to the ground. As the victim was getting down, he observed that Nees had a normal, business-like expression on his face. The gunman went to the cupboard where the victim stored his drugs and retrieved them. He then instructed Nees to get the victim's wallet from him. Following the completion of the robbery, Nees left the house with his two companions.
>
> We conclude that a rational trier of fact could reasonably infer from the evidence adduced at trial that Nees aided in the commission of the robbery, had knowledge of the use of the gun, and benefited from the use of the gun. . . . It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury' verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict.

(Exh. 59 at 1-3.) The state courts' conclusion was not contrary to, nor an unreasonable application of, clearly established federal law, nor an unreasonable determination of the facts.

While Petitioner's version of events is certainly one the jury could have accepted, that does not mean that its contrary conclusion was irrational. A rational juror could have concluded Petitioner aided and abetted in the robbery.

Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury to his person or property. *See* Nev. Rev. Stat. § 200.380(1). "A person aids and abets the commission of a crime if he aids, promotes, encourages or instigates, by act or advice, the commission of such crime with the intention that the crime be committed." *Bolden v. State*, 124 P.3d 191, 195 (Nev. 2005). Petitioner was unfazed when the gunman took out a gun and ordered Buehler to the floor, Petitioner took Buehler's wallet, and Petitioner left with the other two men. Petitioner was the person who brought the two men into Buehler's home, after asking Buehler how much money he had. The evidence was sufficient to support the aiding and abetting conviction.

There was also sufficient evidence to support the deadly weapon enhancement. At the time of Petitioner's trial, an unarmed aider and abetter was liable for the enhancement where "one of two robbers holds a victim at bay with a gun and the other relieves the victim of his properties, or . . .the unarmed assailant has knowledge of the use of the gun and by his actual presence participates in the robbery, the unarmed offender benefits from the use of the other robber's weapon, adopting derivatively its lethal potential." *Anderson v. State*, 600 P.2d 241, 244 (Nev. 1979), *abrogated by Brooks v. State*, 180 P.3d 657 (Nev. 2008). The *Anderson* court further explained that:

> the possession necessary to justify statutory enhancement may be actual or constructive; it may be exclusive or joint. Constructive or joint possession may occur only where the unarmed participant has knowledge of the other offender's being armed, and where the unarmed offender has, as here, the ability to exercise control over the firearm.

*Id.* In 2008, after Petitioner's conviction became final, the Nevada Supreme Court issued an opinion that clarified the standard for application of the deadly weapon enhancement. In *Brooks*, the Nevada Supreme Court held:

> [T]he relevant inquiry is whether the unarmed offender 'used' the deadly weapon in the commission of the offense. . . . [A]n unarmed offender 'uses' a deadly weapon and therefore is subject to a sentence enhancement when the unarmed offender is liable as a principal for the offense that is sought to be enhanced, . . . another principal to the offense is armed with and uses a deadly weapon in the commission of the offense, and the unarmed offender had knowledge of the use of the deadly weapon.

*Brooks v. State*, 180 P.3d 657, 661 (Nev. 2008). In so holding, the Nevada Supreme Court explicitly rejected the "constructive possession" test set forth in *Anderson*.

While Petitioner argues that *Brooks* is a more favorable standard and should apply to his case, the contrary appears to be true. However, under either standard, the evidence was sufficient for a rational juror to find Petitioner was guilty of the deadly weapon enhancement. The evidence showed that Petitioner was aware of and had knowledge of the gun during the commission of the crime. He was standing in the room with the gunman when the gunman pulled out his weapon and ordered Buehler to the ground. Petitioner then participated in the robbery by taking Buehler's wallet out of his pocket. A rational juror could have determined, beyond a reasonable doubt, that the Petitioner had knowledge of the gun and relieved the victim of his property or by his actual presence participated in the robbery. Petitioner's case is in fact indistinguishable from other cases in which the Nevada Supreme Court found the deadly weapon enhancement properly applied under the *Anderson* standard. *See Jones v. State*, 899 P.2d 544, 546 (Nev. 1995). The standard under *Brooks* is even more easily met, as Petitioner was an unarmed accomplice who had knowledge of the use of a gun. Petitioner's claim that the evidence was insufficient to support the deadly weapon enhancement is therefore without merit.

Petitioner is not entitled to relief on Ground 3 of the petition.

## V. CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, Petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v.*

*Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *See id.*

The Court has considered the issues raised by Petitioner with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. Accordingly, Petitioner will be denied a certificate of appealability.

## VI.  CONCLUSION

It is therefore ordered that the petition for writ of habeas corpus in this case (ECF No. 45) is denied and this action is dismissed with prejudice.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is directed to enter final judgment accordingly and close this case.

DATED THIS 25th day of March 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE